UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JON BOURASSA,<br>    Plaintiff,<br><br>v.<br><br>MASSCOR OPTICAL INDUSTRIES, et al.<br>    Defendants. | CIVIL ACTION<br>NO. 4:18-cv-40152-TSH |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 205)

### JULY 13, 2021

**HILLMAN, D.J.,**

  Jon Bourassa ("Plaintiff") filed this suit *pro se* against two inmates, the N.C.C.I Gardner Superintendent, MassCor Optical Industries ("MassCor"), two correctional officers, and one MassCor employee concerning his treatment after he reported a theft in the prison's MassCor Optical workshop. He alleged violations of the Eighth Amendment (Count I); the Massachusetts Whistleblower's Act, M.G.L. c. 149, § 185 (Count II); intentional infliction of emotional distress (Count III); and the Fourteenth Amendment (Count IV); and gross and criminal negligence (Count V). The only claims remaining are Counts I, III, and IV against Ashley Armey and Jason Hayden in their personal capacities, which they have moved to dismiss or, in the alternative, for

1

summary judgment. (Docket No. 205). After hearing and for the reasons set forth below, the motion for summary judgment is **_granted_** as to both Armey and Hayden. As Armey and Hayden are the only remaining defendants, the case is closed.

## I.     Background

*Complaint*

As an inmate at N.C.C.I. Gardner, Plaintiff worked at MassCor Optical's workshop manufacturing eyeglasses in exchange for hourly wages and good time credit.[1] (Comp. ¶¶ 13-14). During the week of February 19, 2018, Plaintiff observed two inmates, Zabeck and Hill, stealing glasses frames from the workshop supply room and informed Armey, a MassCor employee and the workshop supervisor. (¶ 15). On February 26, 2018, Zabeck and Hill's cells were searched, and Correctional Officer Tower fired Plaintiff from his position at workshop. (¶ 16-17).

Plaintiff claims that Armey told Zabeck and Hill about Plaintiff's accusations against them and Hayden, a correctional officer, revealed that Plaintiff's disclosure was the reason their cells had been searched. (¶¶ 19-20). Hayden also asked the men "if they were ok with them still living in the same institution with [Plaintiff]." (¶ 21). Zabeck and Hill told Hayden that "they were not going to do anything," but Plaintiff claims that Zabeck and Hill and other inmates began threatening him, causing him to "live in fear." (¶¶ 21-22).

On March 6, 2018, Plaintiff filed a grievance (an informal complaint) about his termination and Armey's disclosures with N.C.C.I. Gardner Superintendent Goguen. (¶ 23; Docket No. 1-2). Plaintiff alleges that Armey continued to provoke retaliation against him by

---

[1] Plaintiff notes that the Optical workshop previously offered a vocational training program with skill certification.

informing Hill about the grievance, provoking Hill to tell other inmates that Plaintiff "was a rat" who "needs to be dealt with." (¶¶ 24-25). On March 18, 2018, the prison denied the grievance, citing poor work performance as the actual reason for Plaintiff's termination and noting that Armey denied telling Hill or Zabeck about Plaintiff's report or that he was the reason they had been searched. (¶ 26; Docket No. 1-2). Plaintiff filed a formal complaint about Armey's disclosures to Hill and Zabeck, describing the ongoing threats, and seeking to be reinstated at MassCor, which triggered an investigation under the prison's policy for inmate complaints. (¶ 27; Docket No. 1-2 at 2-3).

Plaintiff alleges that Armey informed Hill about Plaintiff's new complaint and the incipient investigation, and that he "remained living in fear" because Hill "made it known" in the prison that there would be an investigation, and other inmates began threatening him. (¶ 28). Plaintiff told the superintendent and her investigator about Armey's disclosures to Hill, as well as how Hayden had revealed his name to Hill and Zabeck with the intent to cause the Plaintiff harm. (¶¶ 29-30).

On July 9, 2018, the investigation concluded. Plaintiff's formal complaint was denied based on a finding of no evidence of staff misconduct or wrongful termination. (¶ 31; Docket Nos. 1-3 at 3, 85). Superintendent Goguen denied Plaintiff's appeal, which reiterated his claims against Armey and Hayden, noted that a folder with affidavits supporting his claims had been taken from his locker, and that the inmates who had supplied the stolen affidavits had been "yelled at at work" for helping him and would no longer cooperate. (¶ 33; Docket No. 1-2 at 4).

Plaintiff claims that as the result of Armey and Hayden's disclosures to Hill and Zabeck, he fears for his life and continues to receive threats from Hill, Zabeck, and other inmates who are aware that he reported Hill and Zabeck's theft, and that the prison staff refuses to act upon the

threats or give him another work assignment. (¶¶ 34, 36-38). He further alleges that Armey continued to keep Hill informed about his actions. (¶ 35). According to his opposition brief, he was transferred out of N.C.C.I. Gardner in January 2019. (¶ 7, Docket No. 211 at 1).

*Additional Evidence on Summary Judgment*

Due to Plaintiff's periods of solitary confinement and his subsequent transfer to another facility, he has only been able to procure one affidavit to support his case. That two-sentence affidavit, furnished by inmate Marquis Kevin Jones, states that Jones heard another inmate, Paul Nolan, tell Plaintiff that he needed to drop the case against Armey "or something bad could happen to his life." (Docket No. 213). Jones adds that he spoke with Plaintiff after Nolan's statement, and that Plaintiff told Jones that "he would handle it." (*Id.*).

### III.  Procedural History

Plaintiff filed this complaint *pro se*, naming Superintendent Goguen, Tower, MassCor, Armey, Hayden, Joyce, Zabeck, and Hill as defendants and seeking compensatory and punitive damages, declaratory judgment, as well as injunctive relief against Hill and Zabeck. After screening the complaint, the Court:

- Dismissed all claims against MassCor and Goguen, Tower, Armey, Joyce, and Hayden in their official capacities as state officials under the doctrine of sovereign immunity;
- Dismissed Count I (Eighth Amendment) and Count IV (Fourteenth Amendment) claims against Goguen, Tower, Armey, Joyce, and Hayden in their official, but not their personal, capacities;
- Dismissed Count II (violation of the Massachusetts Whistleblower statute), as none of the Defendants qualified as Plaintiff's "employer" other than MassCor, which enjoys sovereign immunity;
- Dismissed Count V as to Goguen, Tower, Armey, Joyce, and Hayden;
- Dismissed all counts against Hill and Zabeck; and
- Allowed Plaintiff to proceed *in forma pauperis* on his Eighth Amendment, IIED, and Fourteenth Amendment failure to protect claims against the remaining Defendants in their individual capacities. (Docket No. 13).

Tower, Armey, Joyce, and Hayden moved to dismiss, or in the alternative for summary judgment. (Docket No. 82). The Court dismissed Tower and Joyce, but did not dismiss the remaining Eighth Amendment, failure to protect, and IIED claims against Armey and Hayden in their personal capacities. It also declined to act on Armey and Hayden's summary judgment motions, finding that a more fulsome record was needed to evaluate the merits and the applicability of the Defendants' arguments and defenses, including exhaustion and the qualified immunity doctrine. (Docket No. 94).

Since those rulings, there has been a protracted period of discovery in this case. Although I recognize the extreme difficulty *pro se* incarcerated plaintiffs face litigating from prison, Plaintiff has been given a generous amount of time to gather evidence to support his claims, and so I will treat Armey and Hayden's pending motion as one for summary judgment.

## II.   Legal Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is 'genuine' for purposes of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, and a 'material fact' is one which might affect the outcome of the suit under the governing law." *Poulis-Minott v. Smith*, 388 F.3d 354, 363 (1st Cir. 2004) (citations and internal quotations omitted). In considering whether or not a genuine issue of material fact exists, the court "must view the evidence in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). "In order to defeat a motion for summary judgment, the nonmovant may not rest upon some combination of conclusory allegations, improbable inferences, and unsupported speculation, but must instead

present definite, competent evidence to rebut the motion." *Advanced Flexible Circuits, Inc. v. GE Sensing & Inspection Techs. GmbH*, 781 F.3d 510, 516 (1st Cir. 2015).

### III.  Discussion

Three causes of action remain against Armey and Hayden in their personal capacities: (1) failure to protect, in violation of the Fourteenth Amendment; (2) cruel and unusual punishment, in violation of the Eighth Amendment, and (3) intentional infliction of emotional distress (IIED). Each of these claims is dependent upon Plaintiff proving that the Defendant actually told Hill or Zabeck that Plaintiff was the inmate who had reported their alleged theft, caused their cells to be searched, or that he had filed a complaint and that there would be an investigation.  Otherwise, that person did not put Plaintiff at risk of retaliation from his fellow inmates and bears no liability for any threats or fear that Plaintiff has experienced.

A.  Ms. Armey

Plaintiff has alleged that Armey spoke to Hill and/or Zabeck about Plaintiff, jeopardizing his safety, on four occasions: 1) that on February 26, 2018, she told Zabeck and Hill that "the person fired today was the one who informed her that they [Zabeck and Hill] were stealing" (Comp. ¶ 18);  2) that Armey received a copy of Plaintiff's grievance on March 7, 2018, and told Hill about it that same day (¶ 24);  3) that on March 18, 2018, Armey informed Hill that Plaintiff had filed a formal complaint which would trigger an investigation into the circumstances of his termination from the Optical Workshop, including Plaintiff's allegation about the eyeglass frame theft (¶ 26); and  4) that Armey generally kept Hill informed during the course of the investigation and continues to keep him informed about Plaintiff's various complaints (¶¶ 29, 35).

While these allegations may have been enough to survive a motion to dismiss, at the summary judgment stage a plaintiff must provide enough evidence to create a fact issue beyond the bare allegations contained in the complaint.  Plaintiff has not adduced any admissible evidence that Armey told either Hill or Zabeck about Plaintiff's actions.  The Jones Affidavit, which is the only evidence that Plaintiff submitted outside of three opposition briefs that restate his complaint or discuss extraneous issues, does not name Hill or Zabeck.  (Docket No. 213).  Armey denies ever disclosing information about Plaintiff's report or grievances to Hill or Zabeck (Armey Aff. ¶¶ 3-6, Docket No. 84), and the superintendent's investigation supported that finding.  (Docket Nos. 1 at 1-3; Compl. ¶ 85).  Hill and Zabeck deny that Armey ever spoke to them about the Plaintiff's termination from the Optical Workshop, its connection to their cell searches, or Plaintiff's administrative complaints.  (Docket Nos. 21, 61).  At his deposition, Plaintiff admitted that he was not present for any of Armey's alleged conversations with Hill and/or Zabeck, and thus can offer no personal knowledge.  (Bourassa Dep. at 21:6-13; 30:17-22; 46:10-47:24; 48:10-49:4; 57:6-16).

The only evidence that Plaintiff *can* offer to prove that Armey made statements to Hill and/or Zabeck which endangered him are hearsay, double hearsay, or triple hearsay statements from other prisoners offered at his deposition.  For example, Plaintiff testified that "Hill said it right to me that Ashlee said it in the chow hot line that night.  He came straight out and said, she said she told me that you were the one who said it, so why the f***k did you do it?"  (18:5-9).  Plaintiff also explained that another inmate named Flood was standing outside the door of a room in the Optical Workshop and overhead Armey tell Zabeck and Hill to stop misbehaving "because the person that got fired today is the one that pointed – fingered you guys, so knock it off."  (18:23).  Similarly, when asked for the basis of his allegation that Armey kept Hill

7

informed throughout the superintendent's investigation, Plaintiff replied that Hill had said so to his bunkmate, Dumas, and Dumas had then reported the conversation to Plaintiff. (48:10-20).

"It is black-letter law that hearsay evidence cannot be considered on summary judgment." *Davila v. Corporacion de Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 17 (1st Cir. 2007) (refusing to credit hearsay statements in age discrimination suit from plaintiff's co-workers that a supervisor had said that plaintiff was too old for a management position). Plaintiff is clearly offering these statements for the truth of the matter asserted. While the Federal Rules of Evidence contain a litany of exceptions and exclusions to the general rule against hearsay, Plaintiff has not said which, if any, apply here. The most obvious exception, F. R. Evid. 801(d)(2), which provides for the admission of statements by an opposing party, might apply to Armey's statement to any one of the inmates she spoke to, but it would not cover that inmate's statement to Plaintiff reporting what he had heard. Under R. 805, each link in a hearsay chain must fall under a hearsay exception or exclusion. Plaintiff has made no adequate offers of admissibility for any of Armey's statements that reached him through the prison grapevine and which he reported in his deposition, and so they do not form part of the record for summary judgment.

Because Plaintiff has not provided an iota of admissible evidence that Armey made the alleged statements to Hill and Zabeck that endangered his safety, Armey's motion for summary judgment is ***granted*** as to all remaining claims.

*B. Mr. Hayden*

Plaintiff has alleged that Hayden intentionally jeopardized his safety by informing Zabeck and Hill that Plaintiff "was the one who supplied the information that caused them to be searched" because he "had the intent to do [Plaintiff] harm." (Compl. ¶ 20).

Plaintiff has not provided any admissible evidence that Hayden made such a statement to Zabeck and Hill. When asked for the basis of the allegation against Hayden at his deposition, Plaintiff answered that "[t]he source is about 20 people, and I only know them by first names." (Bourassa Dep. 25:7-13). Asked to elucidate, Plaintiff explained that a person named Q or Big Q, Richie, Larry Manning, and "all the workers in Optical" heard Hayden's statement to Zabeck and Hill, because Hayden stopped a group of men walking up a hill on the prison grounds and made the statement in front of the group. (24:14-28:8). Some of the inmates in that group, including Q, then reported Hayden's remarks to Plaintiff, but Plaintiff did not obtain affidavits or depositions from any of them to oppose the motion for summary judgment. (*Id.*). Under these circumstances, Plaintiff's deposition testimony regarding Hayden is not admissible under R. 805, as Plaintiff has not made any offer of admissibility and is clearly offering these hearsay statements for the truth of the matter asserted: that Hayden did in fact expose Plaintiff as "the rat" who accused Hill and Zabeck of stealing eyeglass frames.

The same analysis applies here as with Armey. Zabeck and Hill both deny that Hayden revealed Plaintiff's identify to them, as does Hayden. (Docket Nos. 21, 61; Hayden Aff. ¶ 3-4, Docket No. 85). Plaintiff did not name Hayden in his grievance or formal complaint, so there are no findings from the superintendent's investigation as to what statements he made. The Jones Affidavit does not name Hayden. (Docket No. 213). Plaintiff's deposition testimony concerning Hayden's statement is inadmissible and cannot be considered. All Plaintiff has to oppose

summary judgment are the bare assertions in his complaint, which are not enough to withstand summary judgment.

Hayden's motion for summary judgment is ***granted*** as to all remaining claims.

### V. Conclusion

For the reasons set forth above, Defendants' joint motion for summary judgment is ***GRANTED***.

**SO ORDERED.**

***/s/ Timothy S. Hillman***
**TIMOTHY S. HILLMAN**
**U.S. DISTRICT JUDGE**
